IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| RONALD DUNN, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-13-999-M |
| CAROLYN W. COLVIN, acting Commissioner, Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

Defendant Commissioner issued a final decision denying Ronald Dunn's (Plaintiff) application for disability insurance benefits under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). Chief United States District Judge Vicki Miles-LaGrange referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3), and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, administrative record (AR), and parties' briefs, and recommends that the court reverse and remand the Commissioner's decision.

I.  **Administrative proceedings.**

In his amended application for benefits, Plaintiff alleged that his impairments became disabling in April 2009. AR 147-48. The Social

Security Administration (SSA) denied Plaintiff's claim, and at his request, an Administrative Law Judge (ALJ) conducted a hearing. *Id.* at 27-49. In her June 2012 decision, the ALJ found that Plaintiff is not disabled. *Id.* at 22. The SSA Appeals Council declined Plaintiff's request for review, *id.* at 1-5, and Plaintiff now seeks review in this Court. Doc. 1.

## II. Disability determination.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520 (b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If he succeeds, the ALJ will conduct a residual functional capacity (RFC)[2] assessment at step four to determine what, if anything, Plaintiff can still do despite his impairments. *See* 20 C.F.R. § 404.1545(e);

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545 (a)(1).

2

*Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, if Plaintiff makes a prima facie showing that he cannot engage in prior work activity, the burden shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

### III. Plaintiff's claims.

Plaintiff alleges that the ALJ made both factual and legal errors in addressing two treating physicians' medical opinions, Doc. 13, at 5-7, and committed legal error in determining that Plaintiff has transferable skills. *Id.* at 8-9. The undersigned agrees with these arguments, and has therefore elected not to address Plaintiff's remaining claim involving the ALJ's credibility analysis. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

### IV. Analysis.

#### A. Standard for review.

This Court's review is limited to whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *See Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010).

## B. The ALJ's relevant findings.

The ALJ found that Plaintiff has severe "history of knee surgery, hypertension, osteoarthritis, arthrosclerosis of the aorta, obstructive sleep apnea, chronic obstructive pulmonary disease, and obesity." AR 13. She then found that with these severe impairments, Plaintiff has the RFC to perform "a wide range of light work" and, in relevant part, "can stand and/or walk[] for thirty minutes at a time, for a total of six hours in a workday." *Id.* at 17. Finally, the ALJ found that Plaintiff had past semi-skilled work which "required skills in general commercial driving skills" and can transfer those skills to "other occupations with jobs existing in significant numbers in the national economy." *Id.* at 20.

## C. The ALJ's assessment of two treating physicians' opinions.

Under what is commonly referred to as the "treating physician rule," a treating physician's opinion is generally afforded greater weight than the opinions from non-treating sources. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). In particular, a treating physician's opinion is entitled to "'controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record.'" *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citation omitted). If the ALJ believes that such an opinion is not entitled to "controlling weight," she must "make clear how much weight

the opinion is being given (including whether it is being rejected outright) and give good reasons . . . for the weight assigned." *Id.* And, if the ALJ has grounds for rejecting the opinion, she must articulate those specific and legitimate reasons. *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

### 1. Dr. Louie L. Wall

Plaintiff applied for a handicapped parking placard, and the application required a physician's certification. AR 369. On Plaintiff's application, the physician's information is certified as: Raymond Louie Wall, license no. 15347, 1600 SW 119th St., OKC, OK 73170. *Id.* The physician certified that Plaintiff "cannot walk 200 feet without stopping to rest." *Id.*

The ALJ rejected the physician's walking limitation on two grounds. First, she found that the physician's signature is illegible and thus the "signature of the application for a handicapped placard cannot be identified." *Id.* at 19. But earlier in her opinion, the ALJ stated that "Dr. Wall limited the claimant in walking, not with upper extremity use (Exhibit B11F)." *Id.* at 18. Exhibit B11F is the application for the handicapped parking placard. *Id.* at 369. Thus, despite her contradictory statement, the ALJ clearly

5

understood that Dr. Wall was the certifying physician and had limited Plaintiff to walking only 200 feet without stopping to rest.[3]

Second, the ALJ rejected the walking restriction because "conclusions of disability for parking permits are not controlling as to disability under Social Security Regulations." *Id.* at 19. But the Department of Safety's *conclusion* regarding Plaintiff's eligibility for a handicapped placard is not at issue here. Dr. Wall – Plaintiff's treating physician – gave an *opinion* regarding Plaintiff's physical limitations. The undersigned finds no authority allowing an ALJ to reject a treating physician's opinion regarding a claimant's *physical limitations* simply because the opinion was directed to another agency. Indeed, the ALJ bears an obligation to evaluate *every* medical opinion. *See* 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive.").

For both reasons, the undersigned finds that substantial evidence does not support the ALJ's rejection of Dr. Wall's opinion regarding Plaintiff's walking limitations.

---

[3] There is little question as to the signing physician's identity. The record reflects that Dr. Wall's name is shown as "Louie L. Wall," AR 276, "R. Louie Wall," *id.* at 377, and "Raymond Louie Wall." *Id.* at 374. Further, Louie L. Wall's business address is 1600 SW 119th, OKC, OK 73170, *id.* at 276 – the same address listed for Raymond Louie Wall on Plaintiff's handicap placard application. *Id.* at 369. Finally, Plaintiff testified that Dr. Wall had signed the application. *Id.* at 44.

### 2. Dr. Ambereen Khan

Dr. Khan completed a Medical Source Opinion of Residual Functional Capacity wherein she opined, in relevant part, that due to pain and/or fatigue, Plaintiff can only "[o]ccasional[ly]" stand/walk. *Id.* at 234. Occasionally is defined on the form as "2-3 hrs." *Id.*

It is difficult to discern the exact weight the ALJ gave Dr. Khan's opinion, but it appears that she rejected it. For example, the ALJ stated:

> The statement of March 18, 2010, is signed by Ambereen Khan, but there is no indication when, if ever, the claimant was seen or treated by Ambereen Khan. There is a reference to a functional capacity evaluation, which was not submitted until well after the hearing and the day following instructions for writing (Exhibits B6F and B17F). The findings include lifting and carrying ten pounds, sitting continuously, and standing and/or walking occasionally with occasional use of upper extremities (Exhibit 17F). It can be concluded that the functional capacity evaluation would not assist the claimant any more than the above residual functional capacity. There is a medical source statement, of February 9, 2010, from Ambereen Khan indicating the claimant is limited to standing and walking occasionally and use of hands for grasping handling fingering, or feeling occasionally, due to pain and fatigue (Exhibit B17F). Again, there are no records indicating whether Ambereen Khan is an acceptable medical source or ever treated or examined the claimant. Finding on independent examinations are minimal (e.g., Exhibit 5F). The claimant submitted one worker's compensation examination (Exhibit 6F), but none of the others. The findings of the doctor, whose records were submitted, appeared to make findings largely on the claimant's reports of symptoms.

*Id.* at 19.

The undersigned finds many errors in this passage. For example, the ALJ twice seems to reject Dr. Khan's opinion due to the lack of evidence that the physician ever saw or treated Plaintiff. But the medical record establishes at least two occasions where Dr. Khan examined and treated Plaintiff. *Id.* at 355-60, 362. Indeed, this physician ordered the x-rays that the ALJ references elsewhere in her opinion. *Id.* at 14, 363-64. The ALJ then complains about the timing in which Plaintiff submitted Dr. Khan's report. The ALJ's purpose in making this statement is unclear – regardless, she is incorrect. Dr. Khan's report is found at Exhibit B10E, *id.* at 234, which the ALJ specifically identified as having at the hearing. *Id.* at 30. Also, the date stamps on the report show creation and submission of the report well before the hearing date in December 2010. *Id.* at 234 (showing dates of 2/9/10, 3/19/10).[4]

Most troubling is the ALJ's next conclusion, that "the functional capacity evaluation would not assist the claimant more than the above residual functional capacity." *Id.* at 19. The ALJ assessed Plaintiff with the ability to perform "a wide range of light work." *Id.* at 17. Relevant here, light work requires the ability to perform a "good deal of walking or

---

[4] Dr. Khan's report appears twice in the record, once as Exhibit B10E, AR 234, and again as Exhibit B17F. *Id.* at 421. Exhibit B17F contains the annotation "new recs" on it, but also bears a "copy" stamp and a handwritten date of "3-18-10," and a date of certification of "2/9/10." *Id.* Perhaps this confused the ALJ.

8

standing," or "sit[] most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). According to the SSA, light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (1983). Further, "[t]o be considered capable of performing a full *or wide range*[5] of light work, [Plaintiff] must have the ability to do substantially *all* of these activities." 20 C.R.F. § 404.1567(b) (emphasis added); *see also Gutierrez v. Barnhart*, 109 F. App'x 321, 326 n.4 (10th Cir. 2004) (rejecting the Commissioner's argument that plaintiff could perform light work because, while he could not stand or walk for long periods, he could sit most of the time, on grounds that "to be able to perform . . . . light work, plaintiff must be able to perform 'all or substantially all occupations existing at that exertional level,'" and "if plaintiff could perform only *those* light jobs [allowing for sitting most of the time], he would not be able to perform the full range of light work" (citations omitted)).

Dr. Khan opined that Plaintiff can walk and/or stand only occasionally, or 2-3 hours a day. AR 234. This limitation does not meet the definition of light work. *See also id.* at 47 (VE's testimony that "as a general rule," a claimant physically limited in the manner described in Dr. Khan's report

---

[5] The ALJ said Plaintiff could perform a "wide range" of light work. AR 17. For light work, the social security regulations use the phrases "full range" and "wide range" interchangeably. 20 C.F.R. § 404.1567(b).

9

would be limited to "sedentary work"). So, the undersigned finds error in the ALJ's conclusion that Dr. Khan's RFC assessment "would not assist [Plaintiff] any more than the above residual functional capacity [for light work]." *Id.* at 19.

Finally, the ALJ's last three sentences defy meaningful review. She states that findings on "independent examinations are minimal," but then cites to an RFC assessment from a *non-examining* source. *Id.* at 19, 322-29. The ALJ does not explain the relevance of Plaintiff's worker's compensation examination, and does not identify which doctor she is referring to when she says that "[t]he findings of the doctor, whose records were submitted, appeared to make findings largely on the claimant's reports of symptoms." *Id.* at 19. If the ALJ is referring to Dr. Khan, this would directly contradict her two previous statements that she could find no medical evidence relating to Dr. Khan.

In sum, the undersigned finds that the ALJ erred in rejecting Dr. Khan's opinion regarding Plaintiff's physical limitations.

### 3. Summary.

For the reasons discussed above, the undersigned finds that the ALJ's assessment of Dr. Walls's and Dr. Khan's medical opinions is factually inaccurate and legally insufficient. The undersigned also rejects the Commissioner's attempts to salvage the decision by promulgating reasons

why the ALJ *could have* legitimately rejected both opinions. Doc. 15, at 5-9. When a "harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action . . ." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *see also Saterlee v. Astrue*, 450 F. App'x 753, 756-57 (10th Cir. 2011) (rejecting the Commissioner's arguments for why the ALJ could have legitimately rejected the medical opinions as post hoc justifications, and noting that: "Disposition of this case on the [post hoc justifications] would entail an assessment and rejection of a treating physician's medical opinion, a process governed by detailed regulations prescribing a structured analysis that has never been carried out – in particular by the ALJ.").

**D.  The ALJ's findings involving Plaintiff's transferable skills.**

The ALJ determined that Plaintiff is not disabled because he has transferable skills from previously performed semi-skilled work. The undersigned finds that the ALJ also erred at this stage.

"When an ALJ makes a finding that a claimant has transferable skills, [s]he must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable." *Dikeman v. Halter*, 245 F.3d 1182, 1185 (10th Cir. 2001). The ALJ's "'findings should be supported by appropriate documentation.'" *Id*. (citation and brackets

omitted). Additionally, Plaintiff was 58 years old at the time the ALJ issued her decision[6] and is therefore of "advanced age." 20 C.F.R. § 404.1563(b). "Before the Commissioner can find an advanced-age claimant's skills are transferable, [s]he must show that 'very little, if any, vocational adjustment [is] required.' 'The work must be less demanding than that previously performed by the claimant; at the same time, though, it cannot require so little skill that anyone at all could do it, as older people are at a competitive disadvantage for such jobs.'" *Dikeman*, 245 F.3d at 1188 (citations omitted). So, the ALJ had the additional responsibility to make findings "as to the vocational adjustment required for [P]laintiff to perform other, semi-skilled jobs within [his] RFC." *Id.*; *see also Jenson v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) ("The Commissioner must overcome a higher burden at step five to deny benefits to claimants of advanced age.").

Here, the ALJ stated: "The vocational expert testified that the claimant's past relevant work as a transport truck driver was semiskilled and required skills in general commercial driving skills." AR 20. Unfortunately, the VE did not testify in this manner, and no other evidence in the record supports such a finding. That is, on examination, the VE testified only that Plaintiff had previously worked as a "transport truck driver" which was

---

[6] Plaintiff was born in January 1954, AR 140, and the ALJ issued her decision in June 2012. *Id.* at 22.

"semi-skilled" work. *Id.* at 45. The expert did not identify what specific, transferrable skills were involved in that past work. *See id.* at 45-47. Further, Plaintiff's work history report identifies only the title as "driver" – it does not mention specific commercial driving skills. *Id.* at 190-91. Finally, the ALJ never raised with the VE the significance of Plaintiff's advanced age or asked whether he could make a vocational adjustment. *Id.* at 45-46.

With no evidence supporting the ALJ's finding regarding Plaintiff's transferable skills, and no findings relating to Plaintiff's vocational adjustment, the undersigned recommends reversal. *See Dikeman*, 245 F.3d at 1185-88 (reversing in part because the "VE did not identify what specific skills plaintiff acquired [in her past work]" and the ALJ did not make findings as to the effects of plaintiff's advanced age on her ability to perform other semi-skilled work); *Ware v. Barnhart*, 123 F. App'x. 335, 338 (10th Cir. 2005) (finding that the "ALJ's decision . . . is not supported by substantial evidence" where the ALJ asked the VE if any "work would be available that would take advantage of [claimant's] past relevant skills" and the "VE answered by listing several semi-skilled jobs" but "did not identify what specific skills [claimant] acquired in her past work, nor did she discuss how those skills were transferable to the jobs she was listing").

Finally, the undersigned declines to adopt the Commissioner's argument that the missing information about Plaintiff's transferable skills

13

can be gleaned from the Dictionary of Occupational Titles and SSA regulations. Doc. 15, at 14. First, the argument ignores the ALJ's failure to inquire about any necessary vocational adjustment, a vital step considering Plaintiff's advanced age. Second, and more importantly, if the ALJ reconsiders and adopts Dr. Walls's and Dr. Khan's opinions regarding Plaintiff's physical limitations, she may assess a RFC of sedentary work. Then, the question of whether Plaintiff has transferable skills and whether he can make a vocational adjustment becomes paramount. If Plaintiff is limited to sedentary work and either does not have transferable skills, or cannot make a vocational adjustment, his advanced age would make him "disabled" under the Medical-Vocational Guidelines. *See* 20 C.F.R. pt. 404, subpt. P, App. 2 § 201.06. So, the undersigned finds that remand is appropriate.

## V. Recommendation and notice of right to object.

For the reasons discussed above, the undersigned recommends that the court reverse and remand the Commissioner's decision.

The undersigned advises the parties of their right to object to this report and recommendation by the 17th day of September, 2014, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of

both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 28th day of August, 2014.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE